**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



DAPHNE INGRAM, a single woman,
individually; DWIGHT INGRAM,

    Plaintiffs-Appellants,

 v.

UNITED STATES OF AMERICA, by and
through the Department of the Interior, and
Bureau of Indian Affairs,

    Defendant-Appellee.

No. 14-35359

D.C. No. 3:12-cv-05892-RBL

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted October 3, 2016
Seattle, Washington

Before: W. FLETCHER, GOULD, and N.R. SMITH, Circuit Judges.

After oral argument, we determined this case would be appropriate for

mediation. We therefore referred the case to the Ninth Circuit Mediation Office

and withdrew submission in an order dated October 13, 2016. On January 27,

---

 \*   This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

2017, the Circuit Mediator issued an order concluding that mediation efforts had been exhausted and returning the case to the panel. We now resubmit the case for decision and issue a memorandum disposition on the merits.

Daphne Ingram and her son Dwight Ingram brought suit against the United States under the Federal Tort Claims Act ("FTCA"), alleging that employees of Chief Leschi High School, a tribal school, were negligent in administering eligibility requirements and in monitoring Dwight's safety during a school football game. After a bench trial, the district court entered judgment in favor of the United States. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

On September 10, 2011, sixteen-year-old Dwight Ingram collapsed while playing football for Chief Leschi in Puyallup, Washington. School officials called an ambulance and Dwight was taken to Mary Bridge Children's Hospital, where he was eventually diagnosed with a subacute infarct, or stroke.

Chief Leschi is a tribal school, and its employees are considered to be acting within the scope of federal employment under the FTCA. In 2012, Daphne Ingram filed a standard Form 95 claim with the Department of the Interior, Bureau of Indian Affairs, alleging $15 million in damages for Dwight's permanent brain damage as a result of the stroke and her loss of Dwight's consortium. The U.S. denied her claim two months later. The Ingrams then filed a complaint for

2

damages on both a personal injury theory and loss of consortium theory.  The parties stipulated to bifurcating the trial as to Dwight's personal injury claim and Daphne's loss of consortium claim.  Following a three-day bench trial, the district court entered judgment in favor of the United States.

In Washington, football coaches "who know[], or in the exercise of reasonable care should know, that one of the players is physically unfit to enter the game," have a duty not to "permit[], persuade[], or coerce[] such player to play." *Morris v. Union High Sch. Dist. A, King Cty.*, 294 P. 998, 999 (Wash. 1931). Washington's "Zackery Lystedt law" further provides that "[a] youth athlete who is suspected of sustaining a concussion or head injury in a practice or game shall be removed from competition at that time," and "may not return to play until [he or she] is evaluated by a licensed health care provider trained in the evaluation and management of concussion and receives written clearance to return to play from that health care provider."  Wash. Rev. Code § 28A.600.190(3), (4).  The Ingrams argued, at trial and on appeal, that Chief Leschi employees breached both their common law duty and duty under the Zackery Lystedt law by permitting Dwight to play in the fall 2011 football season and by failing to remove him from the September 10, 2011 game after he suffered two hits to the head.

3

The district court, relying on Athletic Director Adams's testimony, found that Chief Leschi had received and reviewed "the appropriate authorizations" prior to allowing Dwight to play in the fall 2011 season. In particular, Dwight's October 2009 physical examination met the requirements of the Washington Interscholastic Activities Association policy and Chief Leschi Handbook. Moreover, the district court concluded that Dwight did not inform his coaches of his head injury sustained during practice on June 13, 2011, and therefore Chief Leschi employees were not on notice of the need to obtain medical clearance for Dwight prior to his return to play. *See* Wash. Rev. Code § 28A.600.190. Although contested, these factual conclusions were neither implausible nor illogical, and were supported by testimony provided at trial.

The district court reasonably relied upon the testimony of three coaches that Dwight did not inform them that his head hurt at the September 10 game. *See Newton v. Nat'l Broad. Co., Inc.*, 930 F.2d 662, 671 (9th Cir. 1990) (heightened deference due to a trial court's credibility determination). Neither the game video nor witness testimony presented at trial established an observable decline in Dwight's play or affect. *Cf. Swank v. Valley Christian Sch.*, 374 P.3d 245, 250 (Wash. Ct. App. 2016). Even assuming the Lystedt law created a duty to remove players after a hit that *could* cause a concussion, without regard to a player's lack

4

of symptoms, it was not illogical, implausible, or without basis for the trial court to conclude that the two hits Dwight sustained during play were not of the type to lead a trained observer to suspect a head injury. Evidence supported the trial court's conclusion that a reasonable, trained coach would not have suspected that Dwight had sustained a head injury prior to his collapse during the September 10, 2011 game.

**AFFIRMED.**